IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 7 |
| | : |
| DAVID STILL | : |
| DEBTOR(S) | : BANKRUPTCY NO. 09-16941SR |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Before the Court is a Chapter 7 Trustee's Motion to approve a litigation settlement. The Debtor objected to the motion and that opposition gave rise a second matter: the Trustee's Motion in Limine to preclude certain testimony which the Debtor wished to offer in support of his objection. A combined hearing was held on March 2, 2010, as to both motions. At the hearing, the Court denied the Motion in Limine and allowed the proposed testimony. Upon completion of the record and after oral argument, the Court took the Motion to approve settlement under advisement. For the reasons which follow, the Court will approve the Trustee's settlement.

*Background*

The settlement which the Trustee proposes to accept resolves a dispute between the Debtor and his former legal counsel. In 2007, the Debtor sued Saul Ewing LLP (Saul) in state court alleging that the firm committed legal malpractice. The alleged malpractice stemmed from a prior suit that Saul had filed in Federal court against the Debtor's former employer (Regulus Group LLC). Saul counterclaimed against the Debtor in state court for $1.8 million in unpaid legal fees. The state court entered

summary judgment in Saul's favor on the Debtor's claims, leaving pending Saul's counterclaim. That ruling prompted the Debtor to commence his Chapter 7 bankruptcy case. The Chapter 7 Trustee appealed the summary judgment ruling. To do so she retained as special counsel the same attorney who represented the Debtor in the malpractice case. The parties agreed to mediation. At mediation, the parties agreed to settle for a payment from Saul of $1.05 million and Saul's waiver of $1.88 million in legal fees. *See generally* Trustee's Motion to Approve and Settlement Agreement attached as Ex. A to Motion.

When the Trustee sought approval of this settlement under Bankruptcy Rule 9019 the Debtor objected. He contends that the amount for which the Trustee proposes to settle is too low. In support of his position, the Debtor relied, in part, on the opinion of the Trustee's special counsel, Mr. Neil Jokelson. In that regard, the Debtor proposed to call Mr. Jokelson as a witness. The Trustee, however, objected to the admission of testimony from her special counsel on the basis of attorney/client privilege. It is that preliminary issue which the Court takes up first.

*Analysis of*
*Motion in Limine*

The Federal Rules of Evidence recognize the privilege attending attorney/client communications. *See* F.R.E. 501. The rules are made applicable to bankruptcy cases by B.R. 9017. The Supreme Court has held that in a corporate bankruptcy, a trustee may waive the attorney client privilege. *See CFTC v. Weintraub*, 471 U.S. 343, 358, 105 S.Ct. 1986, 1996 (1985). The Supreme Court, however, has not extended that ruling to individual chapter 7 cases. Not all courts agree that an individual Chapter 7

debtor may assert the attorney-client privilege in bankruptcy matters. Some courts conclude that the privilege belongs to the Chapter 7 debtor; others maintain that the trustee controls the privilege; and still others hold that the trustee controls the privilege for some types of bankruptcy litigation and the debtor for others. *Glassman v. Heimbach, Spitko & Heckman (In re Spitko)*, 2007 WL 1720242 at *18 (Bankr.E.D.Pa.June 11, 2007) *citing* Labovitz, *Attorney-Client Privilege in Individual Bankruptcy Cases ... An Emerging Oxymoron?,* 104 Com. L.J. 301 (Fall 1999) *with* Thomas, Note, *Fifteen Years After Weintraub: Who Controls The Individual's Attorney-Client Privilege in Bankruptcy?*, 80 B.U. L.Rev. 635 (April 2000)   The trend of the cases is toward a balancing approach:

> most recent cases have held that, at least under some circumstances, a trustee may waive the attorney-client privilege in an individual bankruptcy case. *Foster v. Hill (In re Foster),* 188 F.3d 1259 (10th Cir.1999) (holding that determination of trustee's control over privilege should be based upon a comparison of the harm to the debtor against the trustee's need for information); *Ramette v. Bame (In re Bame),* 251 B.R. 367 (Bankr.D.Minn.2000) (holding that the trustee succeeded to privilege regarding all communications that were in regards to estate administration and that took place while the debtor was a debtor in possession); *French v. Miller (In re Miller),* 247 B.R. 704 (Bankr.N.D.Ohio 2000) (holding that whether the trustee has the power to waive an individual debtor's privilege must be made on a case-by-case basis); *Moore v. Eason (In re Bazemore),* 216 B.R. 1020 (Bankr.S.D.Ga.1998) (holding that trustee may waive privilege where no harm would come to the individual debtors and where waiver would not have a chilling effect on the attorney-client relationship); *Whyte v. Williams (In re Williams),* 152 B.R. 123 (Bankr.N.D.Tex.1992) (holding that trustee had the power to waive privilege in the case of an individual debtor where the trustee sought to pursue avoidance causes of action). *But see In re Silvio De Lindegg*

>  *Ocean Developments of America, Inc.,* 27 B.R. 28
>  (Bankr.S.D.Fla.1982) (holding that a trustee could not waive
>  an individual debtor's privilege).

*Spitko, supra* at *19*, quoting In re Eddy*, 304 B.R. 591, 598 (Bankr.D.Mass.2004).  This Court finds the balancing approach to be well-reasoned and will follow it.

As previously noted, the Court denied the Motion in Limine.  In weighing the respective interests in allowing (versus excluding) counsel's testimony, the Court failed to see how special counsel's testimony might unduly prejudice the Trustee's case.  Mr. Jokelson opined that the malpractice case was worth at least $5 million more than the Trustee proposed to settle it for.  She, in turn offered evidence to the contrary.  Permitting the testimony at issue simply permitted a full and fair examination of the question sub judice .   The Court turns next to the substantive motion.

*Analysis of Motion
to Compromise*

Under Bankruptcy Rule 9019, the Court has authority to approve a compromise of a claim, provided that the debtor, trustee and creditors are given twenty days' notice of the hearing on approval of the compromise or settlement.  *See* B.R. 2002(a)(3), 9019(a).  Approval of the settlement lies within the sound discretion of the Bankruptcy Court. *In re Neshaminy Office Bldg. Assocs.,* 62 B.R. 798, 803 (E.D.Pa.1986)  In deciding whether to approve a settlement, the Court must determine whether the proposed settlement is in the best interests of the estate. *Id.*  The Third Circuit has held that this particular process of bankruptcy court approval requires the Court to assess and balance the value of the claim that is being compromised against the value

to the estate of the acceptance of the compromise proposal. *See In re Martin,* 91 F.3d 389, 393 (3d Cir.1996). Taking its cue from *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-25, 88 S.Ct. 1157, 1163-64, 20 L.Ed.2d 1 (1968), the Third Circuit recognizes four criteria that a court should consider in striking this balance: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *See Martin, supra*; *see also Will v. Northwestern University (In re Nutraquest, Inc.)*, 434 F.3d 639, 645 (3d Cir. 2006) (reaffirming *Martin* factors for approval of settlements). Case law teaches that when considering the relevant factors the court should avoid second-guessing the Trustee in the exercise of his or her business judgment, but rather should endeavor to ascertain whether the terms of the Trustee's proposed settlement fall below the lowest range of reasonableness. *See Neshaminy, supra* at 803. As the proponent of a settlement, the Trustee bears the burden of proof. *See In re Glickman Berkovitz, Levinson & Weiner,* 204 B.R. 450, 455 (E.D.Pa.1997).

*Probability of Success*

Of the four factors to be considered, it is the likelihood of an unfavorable outcome which most strongly influenced the Trustee's decision to settle. In evaluating this factor the Trustee focused upon the case history. T- 35  In her judgement, it demonstrated that even if the Debtor were granted a new trial, the chances of ultimate success were slim. T-35. In every forum in which the merits of the case were tested,

they had been found wanting.  Beginning in federal court — when the Debtor was represented by Saul against his former employer — he was unsuccessful.  T-72.  Post-verdict motions likewise yielded nothing to benefit the Debtor.  T-24.  He next retained a different firm (Dilworth Paxson) who filed claims under the UCC; however, those claims fared no better.  *Id.*  Next, and last, came the case the Debtor brought against Saul for legal malpractice allegedly committed in the first suit.  The state court found no evidence to support his claim and granted summary judgment in the firm's favor.  *See* Ex. 2, Order and Opinion dated September 10, 2009.  It was that ruling which the Trustee found particularly persuasive.  There, the state court had found that the Debtor's shares were not cancelled while the Debtor was represented by Saul.  T-25.  What followed, said the Trustee, was that the Debtor "could not have damages for a claim which did not factually exist."  T-26.[1]  For the Trustee it was apparently hard to see how these claims would succeed on a fourth attempt.

Even assuming liability might be established, the Trustee saw the damage component of the Debtor's case to be equally weak.  T-36  Damages would be a function of the value of the shares of stock of which the Debtor was deprived.  *Id*.  Yet, the value of the shares which the Debtor says were wrongly cancelled appears to have

---

[1] Although the Trustee filed a notice of appeal, the Court does not infer from that act that she necessarily thinks that the state court was likely to be reversed.  The decision to appeal appears to have been made more in the way of caution than any conviction in the Debtor's claims.  After the Bankruptcy filing the trustee was engaged in ongoing meetings and telephone conferences aimed principally at investigating whether a settlement was possible. *See* Ex. 18 Trustee's Chronology.

been quite small. This is confirmed by the value which he gave to them on his 1996 and 1998 tax returns. *See* Ex. 9, 10. There, the shares were valued at approximately $0.17 to $0.18 per share. This is corroborated by the distributions to other officers of the company; said grants were for stock of the same value. T-36; *see also* Ex. 11, 12. The aggregate value of his shares in 1996 was $125,000 and for 1998 $4500. *Id.* This is roughly corroborated by the testimony at the March 2nd hearing from an attorney at the Saul firm who recalls that, when the Debtor first accused Saul of malpractice, he demanded $200,000 to settle his claim in full. That testimony was unrebutted. T-63 Given that an offer of $1 million has now been made, it does not seem unreasonable for the Trustee to accept it. T-43.

For his part, the Debtor disputes the liability finding that doomed his case in state court: he continues to insist that his stock in the company was cancelled *before* an adverse jury verdict. The proof he offers on that score is an audit by Arthur Andersen and a response to an interrogatory. T-73, 103  If such evidence exists, however, it is not part of this record. Moreover, by the Debtor's own admission, the Arthur Anderson 2001 audit *did not* reflect cancellation of his shares. T-102, 103.[2] Neither did special counsel offer any probative evidence on the issue of liability. Mr. Jokelson merely testified that in his opinion the state court had committed reversible error. T-112  He never identified, in particular, what error occurred. In sum, there is

---

[2] Debtor maintains that in the 2002 audit of the company, the reconcilement of equity reflected that his shares *had* been cancelled in 2001. T-103. Once again, evidence of this was not made part of the record.

simply nothing in the record before the Court which clearly points to liability on Saul's part.

On the question of damages, Debtor again offered little in the way of proof. On cross-examination of the Trustee, Debtor's counsel <u>alluded</u> to a "September '98 Arthur Anderson report which valued the subject company at between $600 and $910 million." T-58. Similarly, the Debtor testified that after a private equity firm took a substantial interest in the company, it became worth $550 million and he still owned 20% to 30% of the business. T-69, 70. The record is devoid of any competent evidence on these contentions. Neither is there anything supporting Mr. Jokelson's belief that the case was still worth between $6 million to $10 million, even after the claims were dismissed on summary judgment. T-112 Mr. Jokelson's unadorned view of the value of the case appears, in fact, to be rather plainly belied by compelling evidence to the contrary. Given the Trustee's duty to realize the greatest recovery for the estate's creditor constituency, her parting ways with special counsel, although atypical, appears reasonable.

*Complexity, Cost and
Length of the Litigation*[3]

Even assuming the summary judgment ruling was overturned and a verdict

---

[3] Because the Trustee essentially passed over the question of whether it would be difficult to collect a larger award from Saul, the Court need not devote much time to the question. No evidence was presented which tended to show that Saul was insufficiently capitalized or unable to satisfy an award against it. Indeed, Mr. Jokelson's testimony, uncontroverted by the Trustee, was that Saul's malpractice insurance coverage limit was $20 million. T-110.

returned in favor of the Debtor, the Trustee anticipated that it would take a considerable amount of time and require significant cost to litigate the case. That the Trustee could expect a vigorous defense on behalf of the Saul firm seems clear. Upon becoming appointed Trustee, she solicited position letters from both sides of the litigation. T-47 Saul's defense counsel responded with a seven page letter setting forth Saul's position regarding the merits of the Debtor's claim, the inherent failure of damages, and an overview of the litigation itemizing other deficiencies in the case. *See* Ex 3. Considering that much of the letter derived from what had already occurred, the Trustee could reasonably expect Saul to contest any continued litigation. Coupling the anticipated time and costs with what appeared to be remote prospects of success, the Trustee seems reasonably to have considered settlement the better course.

*Interests of Creditors*

Finally, the Trustee was to consider whether the settlement is in the creditors' best interest. On that point, the Court turns first to whether any creditors objected to the motion. While a number of creditors did object, the objections are of dubious merit. Three objectors are children of the Debtor and another is a company owned by his cousin. T-81, 82 Another is also his tax counsel. *Id.* What all have in common is that the Debtor himself solicited the objections. T-82, 83 None of the objectors appeared at the hearing. Moreover, the Trustee testified that there is no documentary evidence to support the family members' claims. T-29, 30 The objections, in short, appear manufactured.

Turning to whether the compromise serves creditors' interests, the Trustee

9

testified that after costs of administration and payment of priority claims, a distribution to unsecured creditors of somewhere in the range of 30% is anticipated. T-60 Considering that the malpractice claim has met with no success so far, the Trustee's decision to cease pursuing it and accept the offer in hand appears reasonable. *See Suter v. Goedert (In re Suter)*, 396 B.R. 535, 548 (D.Nev.2008) (upholding trustee's decision to settle debtors' prepetition legal malpractice claim after determining low probability of success in light of adverse verdict at state court level, delay involved in collection of funds if successful on appeal, as well as the best interests of creditors).

*Summary*

    Upon review of the record, the Court concludes that the Trustee's decision to settle is well within the required range of reasonableness. Not only might further litigation of the underlying claim potentially yield no benefit, it could well jeopardize a significant and prompt recovery for the estate. There is no bona fide creditor opposition to the settlement and all indications are that it is in creditors' best interests. The Court accordingly grants the Trustee's motion.

    An appropriate order follows.

By the Court:

_Stephen Raslavich_ (signature)

Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: March 31, 2010